ARTHUR CARDINAL, Plaintiff, *v.* UNIVERSITY OF ROCHESTER et al., Defendants.

Supreme Court, Special Term, Monroe County, August 2, 1946.

*William L. Clay* for plaintiff.

*Stephen V. Lines* for defendants.

CRIBB, J. The plaintiff by this motion seeks to compel a discovery and inspection of the premises of the defendant, Uni-

versity of Rochester, and examination before trial of an officer or agent of the defendant.

In this action the plaintiff is seeking damages for personal injuries claimed to have arisen during the presence of the plaintiff in the Bausch & Lomb Building on the river campus of the defendant, University of Rochester. The gravamen of the complaint is that the negligence of the defendant in permitting neutrons and other rays to be disseminated, caused the plaintiff to sustain the injuries alleged. The defendant, University of Rochester, in the course of work done by it for the Federal Government operated a cyclotron to break down atoms, and it is during the course of this work that the plaintiff claims neutrons and other rays were disseminated into the atmosphere.

The plaintiff was working as a bookkeeper on a project other than the Manhattan Project, which the War Department had hired the defendant to perform. During the course of such employment, the office in which he was working was located in the Bausch & Lomb Building. In this same building was housed the cyclotron, to which reference has been made, which was being used in the performance of work under the Manhattan Project. The plaintiff had no connection with the Manhattan Project, which necessitated the breaking down of atoms by use of the cyclotron, but was merely a bookkeeper on an entirely separate and disassociated project.

The University of Rochester had been hired by the War Department to do research work on one of the phases of the Manhattan Project, which was the development of the atomic bomb.

This motion was brought on by an order to show cause in which an affidavit of the plaintiff and of his attorney were used in support of the motion. The defendant university in opposition filed an affidavit by Raymond L. Thompson, treasurer of the University of Rochester, and Major E. L. Van Horn, security officer for the Manhattan Project. A reply affidavit by the plaintiff, sworn to on the 19th day of June, 1946, was filed.

Plaintiff's motion papers are divided into two general parts. In one he specifies the requests for a discovery and inspection, which are numbered " 1." to " 5." inclusive. In the part dealing with the examination before trial, his requests are numbered " 1." to " 11." inclusive.

Of the five requests for discovery and inspection four were disposed of upon the argument, plaintiff's attorney agreeing that the phraseology of a consent to discovery and inspection

under the first, second, third and fourth requests as submitted by defendant and as approved by him, would be incorporated in the order determining this motion. This left for present consideration request No. " 5." which reads as follows: " Leave to take samples of all the substances and minerals used in the operation of said Cyclotron Machine, said samples to be furnished by the defendant, University of Rochester, including any samples of Uranium 235 and plutonium." This request must be denied upon two grounds either of which would be sufficient to sustain such disposition. Upon the argument it developed that plaintiff may purchase in the open market lithium, beryllium and deuterium gas which are all of the materials used in the cyclotron excepting uranium 235 and plutonium. It appears from the affidavit of the treasurer of the University of Rochester that the university " has no Uranium 235 and no plutonium either as owner or possessor. It has neither of these two substances under its control nor jurisdiction."

It is also stated in the same affidavit that the University of Rochester has custody of minute quantities of these substances which are owned by the War Department, and subject to its orders, exclusive of all other persons. The university is a mere custodian thereof. In the affidavit of Major E. L. Van Horn, he states on behalf of the War Department that it will not consent to the plaintiff having samples of either uranium 235 or plutonium owned by it and in the custody of the University of Rochester.

Section 324 of the Civil Practice Act provides as follows: " § 324. *Power of court to require discovery.* A court of record, other than a justices' court in a city, by order may compel a party, including a public or municipal corporation, to an action pending therein to produce and discover, or to give to the other party, an inspection and copy, or permission to take a copy or photograph of a book, document, or other paper, or to make discovery of any article or property, in his possession or under his control, relating to the merits of the action, or of the defense therein. The procedure for obtaining such order shall be regulated by rules."

A discovery and inspection is predicated upon the basis that the person who is directed to permit the said discovery and inspection must have " in his possession or under his control " the articles or property sought to be discovered or inspected. It is undisputed in this motion, as established by the affidavits of Raymond L. Thompson and Major E. L. Van Horn that the

defendant university has no uranium 235 or plutonium in its possession or under its control.

The second ground for the denial of the application, insofar as it relates to the requests for uranium 235 and plutonium is that the security regulations of the War Department, Manhattan Project, and Army regulations are a bar to such procedure.

The Army regulations, certified copies of which have been submitted to the court, are enacted pursuant to section 16 of title 10 of the United States Code. The pertinent provisions of said Army regulations are AR 380-5, sections 10 a and 20 a, which are as follows: " 10. Authority to classify.— a. Top secret and secret.— Matters may be classified as TOP SECRET or SECRET only by or by authority of the Secretary of War, the Under Secretary of War, an Assistant Secretary of War, the Chief of Staff, the commanding General of the Army Ground Forces, the Commanding General of the Army Air Forces, the Commanding General of the Army Service Forces, an Assistant Chief of Staff of the War Department General Staff, the chief of a technical service, a general officer, the commanding officer of a depot, post, camp, station, or independent command, the commandant of a general or special service school, the chief of a military mission, a military attache, or a military observer.

" 20. Requests for military information.— a. All requests from private individuals, firms, or corporations and Federal or State Agencies or departments for classified military information (except those requests defined under b and c below) are subject to policies established by the Assistant Chief of Staff, G-2, War Department General Staff."

The university being subjected to the control of the War Department in the work on the Manhattan Project, and the War Department, having determined that uranium 235 and plutonium are to be classified and are of such a character that their dissemination would prejudice the safety and welfare of the country, issued orders as stated in the affidavit of Major Van Horn and Mr. Thompson, prohibiting the university from giving any samples. Assuming for the moment that this court has the power to order the defendant university to submit samples of uranium 235 and plutonium to the plaintiff, such a ruling would open the door to possible developments which could result disastrously to our country and its people.

Plaintiff in his reply affidavit has asked that the cyclotron be operated during the period that the sample of air is taken in

the Bausch & Lomb Building. As has been established by the affidavit of the treasurer of the University of Rochester, Raymond L. Thompson, the character of this machine has been changed entirely from that existing during the period of time the plaintiff was in the Bausch & Lomb Building. The rays now disseminated are in the nature of protons as distinguished from neutrons. No protons emanated from this machine at any period of time while the plaintiff had his office and worked in the Bausch & Lomb Building — only neutrons, due to the materials used in the cyclotron. Therefore, whatever the type of rays the plaintiff claims caused his alleged injuries, any operation of the cyclotron in its present condition would be valueless as the plaintiff must of necessity be limited in the discovery and inspection, and the proof of his cause of action, if any, at the time of trial to conditions substantially similar to those in existence during his period of claimed exposure. Therefore, the cyclotron should not be operated during the period of time the sample of air is being taken by the plaintiff.

The second part of plaintiff's motion papers seeks an examination of the defendant university before trial and submits requests numbered " 1." to " 11." inclusive. All of these were disposed of at the time of argument excepting Nos. " 4.", " 8." and " 10. ". Request No. " 4. " is as follows: " As to the physical examinations of the plaintiff made by the defendant, University of Rochester, to ascertain what effect, if any, said rays, gases and fumes had upon his physical condition or whether he was subjected or exposed to the rays, gases and fumes, emanating from the operation of the Cyclotron Machine and if any examinations were made, a copy of the reports thereof, also examinations of other persons employed in said building or department." This request is denied. I do not believe it falls within the scope of an examination before trial as provided by the Civil Practice Act.

Request No. " 8. " reads as follows: " As to whether or not any examination was made to determine the presence or absence of any rays, gases or fumes in the said portion of the building referred to and if any were found, when and where said gases, fumes or rays or the effects thereof were discovered." The words " in the said portion of the building referred to " should be stricken out, and substituted with the words: " in rooms 206, 207, the Cyclotron control room and the Cyclotron room ". The words of substitution limit the inquiry to that part of the building in which plaintiff's work required him to be while employed therein.

Request No. " 10. " reads as follows: " As to the knowledge of the defendant, its agents, servants and employees of the escape of neutron and other rays from the Cyclotron Machine during the period of time that the plaintiff was on the premises of the defendant." This request is granted excepting it is limited to the period of time during which the plaintiff was in the Bausch & Lomb Building.

Plaintiff's motion for discovery and inspection is granted as to those four requests, as modified, and agreed upon at the oral argument, and request No. " 5. " is disallowed for the reasons stated.

The motion for examination before trial is granted as to the requests numbered " 1.", " 2.", " 3.", " 5.", " 6.", " 9." and " 11." as modified and agreed upon at the oral argument. No. " 7." was disallowed. Of requests Nos. " 4.", " 8." and " 10.", No. " 4 " is disallowed; Nos. " 8 " and " 10 " are allowed as herein modified.

Let order enter accordingly. No costs.